## Lebling's Estate

*O. J. Graham*, of *Gunnison, Fish, Gifford & Chapin*, for estate.

*F. B. Quinn*, of *English, Quinn, Leemhuis & Tayntor*, for exceptant.

WAITE, P. J., March 26, 1941.—Decedent died April 21, 1939, leaving a last will and testament dated September 18, 1931, with codicils dated November 1, 1933, and December 19, 1935. A first and partial account was filed on January 13, 1940, showing a balance of $39,183.21. To this account the following exception was filed on behalf of Dr. Guy C. Boughton, to wit:

"The final account makes no provision for the payment of the bill for professional services rendered by

the exceptant, Doctor Guy C. Boughton, to the decedent, Theodora Linda E. Lebling, which bill is in the sum of Fourteen Thousand Four Hundred Twenty-Four and thirty-hundredths Dollars ($14,424.30), and which bill has been delivered to the executor, Charles P. Reilly."

The testimony shows that claimant had been the family physician of decedent from February 1927 to the time of her death, making almost daily calls upon her.

The first item of the will provides: "I direct that my just obligations existing against me at the time of my decease, and my funeral expenses, shall first be paid from my estate."

Item 6 of the original will directs the executor of the estate to make some personal gift to Dr. Guy C. Boughton, as well as to other persons, "for his kindness in looking after my business affairs when I needed same." No claim is made under this item in the will.

The codicil of December 19, 1935, contains the following provision:

"I give and bequeath to Dr. Guy C. Boughton, of Erie, Pa., for his professional services and in appreciation of his kindness and consideration to me, the following securities: Three (3) bonds of the Commonwealth Edison Company, 3¾ percent first mortgage bonds, Series H, due April 1, 1965, nos. M 1304/6, for one thousand ($1,000) dollars each; and two (2) bonds of the Pacific Gas and Electric Company, Series G, first and refunding mortgage bonds, 4 percent, due December 1, 1964, nos. M 503/4, for one thousand ($1,-000) dollars each; all of which bonds are now deposited with the Bankers Trust Company in New York City."

The codicil then concludes by republishing the last will and testament as amended by the codicil of November 1, 1933, except as above modified.

Objection is made on behalf of the estate to the payment of this claim on three grounds: (1) That the claim is not sufficiently proven; (2) that the statute

of limitations bar recovery for services rendered more than six years prior to decedent's death; and (3) that the amount of the legacy in the will should be applied toward the payment of any amount due Dr. Boughton.

The first objection must be dismissed. . . .

The second objection, that the statute of limitations bars recovery for services rendered more than six years prior to the death of Mrs. Lebling, must in our opinion be sustained. The account of Dr. Boughton, above referred to, is not such an open mutual account that payments made thereon by decedent would bar the running of the statute of limitations. To constitute mutual accounts there must be transactions producing reciprocal demands. Here the charges were all on one side for professional services rendered. The fact that payments in cash were made from time to time does not make this an open mutual account which would bar the running of the statute. In Lowber v. Smith, 7 Pa. 381, at pages 382-83, it is said:

"The question, therefore, is, granting it to be as stated, was there such a mutual account as that one item within six years takes the whole account out of the statute? This point came before the court in Ingram v. Sherard, 17 Serg. & Rawle, 347, and it was there held that, to constitute a mutual account within the exception of the statute, there must be a reciprocal demand; that it does not apply where the demand is altogether on one side, though payments on account have been made. In the case cited, the payment was to be made in cash; but whether in cash or in kind, can make no difference. The principle ruled in the case cited is that there must be a reciprocal demand; that is, each party must have a right of action.

"A mutual account is when each has a demand or right of action against the other, as, for example, when A. & B. dealing together, A. sells B. an article of furniture, or any other commodity, and afterwards B. sells A. property of the same or a different descrip-

tion; this constitutes a reciprocal demand, because A. and B. have a demand or right of action against each other. But this is not so when the sale is only by one to the other, whether it is to be paid for in cash or in kind; the manner of payment can surely make no difference."

See also Ingram et al. v. Sherard, 17 S. & R. 347, Hay v. Kramer, 2 W. & S. 137, and 17 R. C. L. 730, §91. This claim must, therefore, be limited to the items embraced in the last six years prior to decedent's death.

The third objection on the part of the estate, namely, that the amount of the legacy in the will should be applied towards the payment of any amount due Dr. Boughton, must be sustained. The authorities relied upon in claimant's behalf are distinguishable from the instant case and are not, in our opinion, controlling here. The controlling facts in those cases were that the claim exceeded the amount of the bequests and there were no provisions in the wills that the legacies were given in payment of the claims.

In Hardeman's Estate, 85 Pa. Superior Ct. 313, the words of the will by which the bequest is made are "In consideration of the kind treatment and services rendered me by my sister, Margaretta Tracy, I give, will and bequeath to her the said Margaretta Tracy, the sum of", etc. Construing this language the court says, at page 315:

"The legacy does not purport to be given in payment of services rendered and to be rendered until the testatrix's death, but rather expresses the consideration or motive which impelled the gift."

In that case nearly all of the services were rendered after the date of the bequest. In Dembinski's Estate, 316 Pa. 61, although the claim exceeded the amount of the bequest, there were no words in the will to indicate that the bequest was given in payment of the debt. The claim was allowed because it exceeded the amount of

the legacy. The fact that the will also contained a clause directing the payment of decedent's debts was held to be without significance. In the instant case the bequest is given primarily in payment of services rendered, the language being "I give and bequeath to Dr. Guy C. Boughton *for his professional services,* and in consideration of his kindness and consideration to me", etc. This case also differs from Hardeman's Estate, supra, in that most of the services were rendered prior to the date of the bequest. It is true as a general rule that when a legacy is provided for in a will, in the absence of any limitation thereof, it is to be considered as a gratuity and not as a payment of a debt of decedent to the legatee, except when the legacy exceeds the amount of the debt. See Dembinski's Estate, supra. But where, as here, the will specifically provides that the bequest is made for services rendered a different rule applies. The intention of testator is thereby expressed and speaks as of the death of decedent. The intent of testator clearly expressed by the words used is, as has been so often stated, the pole star by which courts must be guided in the interpretation of wills. See Hancock's Appeal, 112 Pa. 532.

The amount of the bequest in decedent's will being less than the amount of Dr. Boughton's claim, he would, of course, not be bound to accept it in full payment thereof; but since the legacy is given and bequeathed "for services rendered" as well as "in appreciation for his kindness and consideration", in fairness and in equity the doctor should, in our opinion, be put to an election either to accept the bequest in payment of the claim or to relinquish his right to the bequest and rely upon the amount of his claim alone. No Pennsylvania authority has been cited, nor have we been able to find any directly in point, but the reason therefor is well stated in Holmes v. Connell's Estate, 207 Mich 663, 175 N. W. 148 (1919), where it is said, at page 665:

"A careful study of the language of the will convinces us that it was the intention of the testator to pay his debt to plaintiff with the provision which he made for her in his will. The words, 'Mrs. Holmes has been my housekeeper and companion for years, and this bequest is given as a token of my regard and appreciation of her services,' used in connection with the language making the bequest, is persuasive that he had in mind the payment of his debt to plaintiff. As is pointed out by counsel, the word 'appreciate' is defined as meaning to 'estimate justly,' or to set a price or value on".

In Re Sharff, 143 Misc. 447, 256 N. Y. Supp. 739 (1932), where the will contained a legacy given in payment of housekeeping services to claimant, it is said (p. 449) :

"It is entirely true, as noted by the Court of Appeals in *Matter of Gould* (156 N. Y. 423, 426), that where a person is a creditor of a decedent, and the latter attempts to make payment of his obligation by a testamentary gift, the creditor has the option of accepting the benefit in solution of the indebtedness, or of rejecting it and seeking recovery on the debt. If the latter alternative is adopted, the claimant's position is obviously merely that of any other creditor and he must establish the justice and amount of his claim in the same manner which is required of any creditor not mentioned in the will. If, however, he elects to take the legacy in satisfaction, he is held strictly to his election and cannot recover upon his claim."

See also Matter of Gould, 156 N. Y. 423, 51 N. E. 287 (1898), In re Hamilton's Estate, 100 Misc. 61, 164 N. Y. Supp. 938 (1917), and 69 C. J. §2150. See also Commonwealth v. Cochran et al., 146 Pa. 223.

So far as the record shows, there had never been a settlement of accounts between the parties or a demand for payment prior to the filing of this claim. Under

such circumstances interest should not, in our opinion, be allowed. In Goodwill v. Heim, 212 Pa. 595, it is held that interest should not be allowed before there has been an accounting or settlement, unless, under the peculiar facts and circumstances surrounding the case, the equities demand that interest be charged. See also McClintock's Appeal, 29 Pa. 360, and Graham, etc., v. Williams, 16 S. & R. 257.

No definite application of the payments made on the account was ever made to any specific part of this claim either by decedent or by Dr. Boughton. It is now urged on his behalf that these payments should be applied to the portion of the account barred by the statute of limitations. With this we cannot agree. Decedent died April 21, 1939. In fairness to both parties, it seems equitable that the payments, if any, made prior to the date of the running of the statute beginning six years preceding decedent's death, to wit, April 21, 1933, should be applied to the account prior to that date and only the payments made since that date to that portion of the account not barred by the statute. Neither decedent's statement nor the doctor's statement shows any items paid prior to the limitation date, April 21, 1933. Therefore, in our opinion, all of these payments should be credited against that portion of the doctor's claim not barred by the statute. . . .

The fact that the will directs payment of decedent's debts as well as the bequests is without significance in Pennsylvania. See Dembinski's Estate (Nos. 1 and 2), 15 Erie 348, 356, affirmed in 316 Pa. 61.

The claimant is, therefore, directed to make an election either to accept the legacy in payment of his claim or to rely upon the claim as proven. When this election is filed, an order of distribution will be made in accordance with this opinion.